**United States District Court**
**District of Massachusetts**

_____
                                            )
IN RE CADKEY CORPORATION,        )
                                            )
       Debtor,        )
                                            )
MICRO CONTROL SYSTEMS, INC.,     )
                                            )
       Appellant,        )
                                            )
       v.        )      **Bankruptcy Appeal No.**
                                            )      **04-40045-NMG**
CADKEY CORPORATION,              )
                                            )
       Appellee.        )
_____ )

**MEMORANDUM & ORDER**

**GORTON, J.**

    The instant appeal relates to the ongoing bankruptcy proceedings of Cadkey Corporation ("the Debtor"). Micro Control Systems, Inc. ("MCS"), a secured creditor, appeals a ruling of the Bankruptcy Court denying its motion for reimbursement of costs pursuant to 11 U.S.C. §§ 503 and 506. The Debtor and the Official Committee of Unsecured Creditors ("the Committee") have filed an opposition brief.


**I.    Background**

    On August 22, 2003, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. That same day, the Debtor also filed a Cash Collateral Stipulation in

which it acknowledged a secured debt of approximately $2,181,499, plus interest, to MCS.

On September 19, 2003, MCS and the Committee agreed to a "carve-out stipulation" ("the Stipulation") whereby the Debtor's assets would be sold and MCS would reduce its secured claim by an amount to be determined based upon the sale price. On September 26, 2003, the Bankruptcy Court approved the Stipulation.On October 16, 2003, Kubotek Corporation ("Kubotek") submitted an offer of $2,850,000 for the Debtor's assets. Two unsecured creditors objected, arguing that the sale price would not generate a sufficient dividend to them after MCS's claim was satisfied.

The objections prompted another round of negotiations during which Kubotek agreed to increase its bid to $3,600,000. MCS, in turn, agreed to an amendment of the carve-out stipulation whereby a simpler formula for reduction of MCS's secured claim was put into place: the claim would be reduced to $1,860,000, irrespective of the final sale price. The modification was memorialized in a proposed Sale Order which was presented to the Bankruptcy Court ("the Sale Order") containing the following language:

> [t]he Stipulation is hereby amended to eliminate the carve-out provided for therein. In lieu thereof and in consideration for . . . payment of $1,860,000 at closing . . . MCS's secured claim as determined by compromise agreement with MCS shall be reduced to $1,860,000, which amount shall be paid to MCS by wire transfer at the closing of the sale.

-2-

No other change to the Stipulation is made or implied. The Bankruptcy Court approved the Sale Order.

Thereafter, on November 14, 2003, a hearing was held before the Bankruptcy Court and, with respect to the sale, counsel for MCS stated that the appellant:

> reserves its rights with regard to reimbursement of legal expenses incurred post-petition as an administrative or other court-approved expense, in addition to the 1.86 million dollars referred to in the current sale order.

On November 25, 2003, at a subsequent hearing, MCS counsel again stated that MCS:

> reserves its rights to obtain reimbursement for expenses under the Bankruptcy Code, Section 506, in addition to the 1.86 million that [MCS] has agreed to accept under the sale order.

The sale was consummated on December 2, 2003. On December 15, 2003, MCS filed an application seeking reimbursement of $74,785 in legal expenses and fees pursuant to 11 U.S.C. §§ 503 506. Appellees objected, arguing that MCS had agreed to "cap its claim" (including reimbursement of expenses) at $1.86 million.

On February 12, 2004, a hearing concerning the motion was held. The Bankruptcy Judge heard arguments and denied the motion orally, stating that:

> [t]he secured creditor in this case reached an agreement with the debtor and the unsecured creditor to cap its claim. That agreement was incorporated – well, that agreement itself constituted a waiver of the balance of its claim and estopped the secured creditor from asking for any more. But even if waiver and estoppel did not apply, the agreement was incorporated in an order, the order became final, and the matter was closed.

-3-

506(b) [of the Bankruptcy Code] does not present a second claim.  It is part of the claim that is set forth in 506(a), and the lender in this case reduced it's [sic] claim to the amount of . . . $1,860,000.  It got that money at closing, and it cannot ask for more.  And so the application is denied.

With respect to the arguments made with respect to substantial contribution, I don't need to reach – reach that question.  The contribution made by the lender was – if any, was made before it reached the agreement to cap its claim.  And so even if it had a substantial contribution claim, that is capped as well.

MCS filed the instant appeal on April 2, 2004.  It argues that the Bankruptcy Court erred: a) by construing the term "claim" in 11 U.S.C. § 506(b) to include both its secured claim, which it agreed to reduce (i.e. the $1.86 Million), and its claim for reimbursement of expenses, b) by misinterpreting the agreement between MCS and the Committee to encompass both the secured claim and its claim for reimbursement, c) by finding that the Sale Order constituted a waiver of MCS's claim for reimbursement, and d) by failing to award expenses pursuant to 11 U.S.C. § 503 for a "significant contribution" to the resolution of the case by MCS.

Appellees respond by arguing that the Court acted within its discretion in construing the parties' agreement to be a complete "cap" on all monies to be paid to MCS.  They also argue that the Court properly denied MCS an award pursuant to 11 U.S.C. § 503 because its alleged "significant contribution" to the resolution of the case was self-serving in nature and therefore did not qualify under the statute.

-4-

II.  **Legal Analysis**

   A.  **Standard of Review**

   In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts".  In re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D.Mass. 1993).  However, a district court must accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous."  Id.

   B.  **Analysis**

      1.  Appellant's Statutory Rights

   MCS contends that it is entitled to reimbursement of its reasonable expenses pursuant to 11 U.S.C. § 506(b).  That provision states as follows:

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

   Notwithstanding the potential effect of any agreement between the parties, MCS meets the statutory requisites for reimbursement: 1) MCS had an "allowed secured claim" for at least $2,181,499, 2) the value of the subject property ($3,600,000) was greater than the amount of that debt and 3) MCS and the Debtor

-5-

had in place a Security Agreement which provided that MCS was entitled to recover its costs.

Appellant also contends that it is entitled to an award under 11 U.S.C. § 503 because it made a "substantial contribution" to the resolution of the case. The Bankruptcy Court did not address the merits of that argument because it ruled that any such claim had been waived as a result of the parties' agreement. To simplify the present analysis, this Court assumes, arguendo, that, absent a waiver, MCS was entitled to seek an award under § 503.

### 2.   Waiver and Contract Interpretation

The fact that MCS, as a secured creditor, initially may have had statutory rights under §§ 503 and 506 is not dispositive of this appeal because neither the appellee nor the Bankruptcy Court questioned the existence of such rights. Rather, the Bankruptcy Court found that MCS waived its rights by agreement. Thus, the issue before this Court is one of waiver and, more generally, of contract interpretation.

Waiver is "an intentional relinquishment of a known right". Boyden v. Hill, 85 N.E. 413, 415 (Mass. 1908). It may be accomplished through contract, either explicitly or implicitly. See id. To determine whether there has been a waiver, courts look to "all the attendant facts taken together". Id. In this case, the question of waiver collapses into a question of

-6-

contract interpretation because the Bankruptcy Court found that MCS had waived its rights under §§ 503 and 506 as a result of a contract and, therefore, regardless of how the issue is characterized, the goal is to ascertain the parties' intent in making the agreement.

Normally, contract interpretation is a question of law for the Court. Trent Partners and Associates, Inc. v. Digital Equipment Corp., 120 F.Supp.2d 84, 98 (D.Mass. 1999). If the terms of a contract are found to be ambiguous, however, interpretation of the parties' intent becomes a question of fact (which is subject to more deferential review). Id. An agreement is ambiguous "when it is susceptible to differing, but nonetheless plausible constructions". Davis v. Dawson, Inc., 15 F.Supp.2d 64, 108 (D.Mass. 1998).

In essence, the instant dispute concerns the meaning of the term "secured claim". In the Sale Order, MCS agreed that its "secured claim . . . shall be reduced to $1,860,000". MCS argues that § 506 reimbursement and a § 503 award were not included as part of its "secured claim" under the agreement. Appellees, to the contrary, contend that the term "secured claim" is meant to reference a "cap" on all of the reimbursement that MCS was to receive. The Bankruptcy Court agreed with the latter argument and ruled that MCS had waived its rights under both §§ 503 and 506.

Both parties present plausible arguments concerning the parties' intent and the meaning of "secured claim" as used in the Sale Order. MCS is correct that § 506(b) seems to distinguish between a creditor's "secured claim" and its secured claim for reimbursement of expenses, because they are payable under different circumstances. There is no evidence, however, that such a distinction was implanted in the Sale Order, which does not make reference to § 506(b), or in the parties' agreement generally.

When the parties were negotiating the best way for MCS to reduce its claim, several alternatives were discussed. One alternative provided that MCS's secured claim (whatever amount it might be) would be reduced by a fixed amount, e.g. $400,000. After further consideration, however, MCS opted for certainty: the parties agreed that MCS's claim would be satisfied by a fixed sum payment at closing. In other words, MCS chose to forego the option of establishing the largest claim possible and subtracting a fixed amount in favor of fixing the amount of its claim. Given that history, one could reasonably have understood, as the Bankruptcy Court clearly did, that the payment at closing was to be a cap on the total amount of the claim to be paid to MCS.

The parties are reproved for choosing to memorialize their agreement using the term "secured claim" without further elaboration as to its meaning, or as to whether they intended to

-8-

invoke § 503 or § 506(b).  One explanatory phrase would have
removed any ambiguity.

Notwithstanding the imprecise draftsmanship, however, the
Sale Order clearly implies that the "secured claim" referred to
therein was intended to include any and all claims possessed by
MCS.  The Sale Order states that MCS's "secured claim . . . shall
be reduced to $1,860,000".  The Order contains no reference to
any other "secured claim" which MCS may have had (e.g. for
reimbursement of expenses), nor does it refer to more than one
such claim.  MCS's argument on appeal is, essentially, that it
had more than one secured claim but, given the provenance of the
Sale Order and its ambiguous language, that argument is
unpersuasive because the Sale Order makes no reference to a
multiple of secured claims.  The fact that it refers generally to
MCS's "secured claim" suggests that the parties considered there
to be only one and that they intended the term to include all of
MCS's rights to payment.

In any event, this Court need not conclusively determine the
parties' intent.  The evidence on the record is inconclusive and
the agreement is "susceptible to differing, but nonetheless
plausible constructions".  Under such circumstances, construction
of the agreement, and interpretation of the parties' intent,

presents a question of fact.  <u>Davis</u>, 15 F.Supp.2d at 108.[1]

The Bankruptcy Judge was intimately involved in this case
during the making of the agreement and was familiar with it from
its inception.  The November, 2003 hearings, from which excerpts
are quoted above, were held before that Judge and he later
convened a hearing concerning the instant dispute.  Based upon
all of that evidence, the Bankruptcy Judge made one of several
potentially reasonable interpretations of the parties' intent:
that MCS waived its rights under §§ 503 and 506.  Because that
conclusion was reasonable, this Court will not disturb it.  <u>In re</u>
<u>Chestnut Hill Mortgage Corp.</u>, 158 B.R. at 549 (stating that
Bankruptcy Court findings of fact are overturned only if "clearly
erroneous").  The Bankruptcy Court's ruling will be affirmed.

**ORDER**

In accordance with the foregoing, the Bankruptcy Court's
denial of appellant's Motion for Reimbursement is **AFFIRMED** and
this appeal is **DISMISSED**.

**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
Dated March 31, 2005

---

[1]A question of fact is also presented if the issue is
characterized as one involving waiver because the presence of
waiver is determined by an analysis of "all the attendant facts
taken together".  <u>Boyden</u>, 85 N.E. at 415.